IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

RONALD D. STOUT,

        Plaintiff,	CV-08-678-ST

   v.	OPINION

MICHAEL J. ASTRUE, Commissioner of Social Security,

        Defendant.

STEWART, Magistrate Judge:

    Plaintiff, Ronald Stout, challenges the Commissioner's decision denying his applications for disability insurance benefits and supplemental security income payments under Titles II and XVI of the Social Security Act. The court has jurisdiction under 42 USC § 405(g). The parties consent to the jurisdiction of the Magistrate Judge to enter final orders and judgment in this case in accordance with FRCP 73 and 28 USC § 636(c).

    The Commissioner concedes reversible error and seeks a remand for further corrective proceedings. Stout opposes additional proceedings and seeks remand for an award of benefits.

1 - OPINION

For the reasons that follow, the Commissioner's Motion to Remand (docket # 43) is granted, and this case is remanded pursuant to sentence four of 42 USC § 405(g) for the limited purposes described more fully below.

## BACKGROUND

This case has a long and tortured history beginning when Stout filed his claim of disability with a protective filing date of August 27, 1996. Admin. R. 247. He initially alleged disability beginning on August 15, 1995, due to degenerative disc disease of the cervical spine and associated pain. *Id* at 64, 74. He later amended the alleged onset date of his disability to December 30, 2000, to avoid the need to resolve issues raised by part-time work he performed during 2000. *Id* at 305, 605-06. Stout's insured status under the Social Security Act expired on December 31, 2000. *Id* at 69. Therefore, he must establish that he was disabled on or before that date to prevail on his Title II claim. 42 USC § 423(a)(1)(A); *see Tidwell v. Apfel,* 161 F3d 599, 601 (9th Cir 1998).

In March 1999, ALJ Sandra Rogers conducted the first hearing in this case. Admin. R. 34-47, 627-58. Stout appeared with his counsel. The witnesses at the hearing included Lawrence Cohen, MD, an impartial medical expert ("ME"), and Wilson Walker, an impartial vocational expert ("VE"). In a decision dated April 8, 1999 (*id* at 15-22), ALJ Rogers found Stout impaired by degenerative disc disease of the cervical spine, degenerative changes in the lumbar spine, and dysthymia, and restricted him to work at the sedentary level of exertion. *Id* at 21. She found Stout capable of performing his past work as a telemarketer and, therefore, did not determine whether other work existed which he could perform. *Id*. As a result, ALJ Rogers concluded Stout was not disabled and denied his applications.

On appeal to this court, Stout claimed his past work as a telemarketer did not qualify as past relevant work, his non-exertional limitations precluded work as a telemarketer, and his lack of transferable skills rendered him disabled under the Medical Vocational Guidelines. *Id* at 326-29. He also claimed the ALJ failed to give adequate weight to Dr. Cohen's hearing testimony. Unfortunately, the tape recording of the 1999 hearing malfunctioned during transcription, and most of the hearing, including the experts' testimony, was not transcribed. *Id* at 47. Because this court could not resolve the issues in Stout's appeal without a transcript of the hearing, it remanded the case on January 10, 2002, for the Commissioner to obtain a transcript, if possible, and if necessary, to conduct a new hearing. *Id* at 319-30. In March 2002, the Appeals Council vacated ALJ Rogers's decision and ordered an ALJ to issue a new decision. *Id* at 331.

ALJ Dan R. Hyatt obtained additional evidence and held two hearings in July and December 2002 with new VE testimony. *Id* at 666-705. On January 17, 2003, he issued a decision (*id* at 336-42) finding that Stout could work at a level of exertion exceeding light work, if permitted to sit or stand at will and restricted to occasional fine finger manipulation. *Id* at 340. The ALJ found Stout could perform his past work as a telemarketer and alternatively, could work as a ticket seller, cashier, or small product assembler. *Id* at 341. In June 2004, the Appeals Council assumed jurisdiction and remanded because the ALJ had not attempted to obtain a transcript of the hearing held in March 1999 as required by this court's remand order. *Id* at 389-90.

In May 2006, the ALJ convened another hearing but took no testimony because the transcript from the 1999 hearing was not in the case file, although there were indications that the tape had been transcribed. *Id* at 597-98. When the ALJ reconvened the hearing a month later, he

3 - OPINION

stated that the transcript was received into evidence as Exhibit 7A and made a part of the record. *Id* at 603-04. At that hearing, he received testimony from a new ME regarding Stout's mental impairments and from a new VE.

In July 2006, the ALJ issued the order which is now on appeal. *Id* at 304-16. In reaching his decision, the ALJ applied the five-step sequential disability determination process set forth in 20 CFR §§ 404.1520 and 416.920. *Bowen v. Yuckert*, 482 US 137, 140 (1987). He found that Stout has the severe impairments of degenerative disc disease in the cervical spine, an affective disorder, a personality disorder, and cannabis abuse. Admin. R. 307. He found Stout's residual functional capacity ("RFC") precluded the activities required in his past relevant work, but enabled him to perform other work in the national economy. *Id* at 314-16. As a result, ALJ Hyatt found Stout not disabled within the meaning of the Social Security Act. Remarkably, when the ALJ issued the decision, the transcript of the 1999 hearing was not in the Administrative Record and was finally added to the record in September 2009 after Stout filed his present appeal (docket # 42).

## **LEGAL STANDARDS**

The court reviews the Commissioner's decision to ensure that proper legal standards were applied and the findings are supported by substantial evidence in the record. 42 USC § 405(g); *Batson v. Comm'r of Soc. Sec. Admin.,* 359 F3d 1190, 1193 (9th Cir 2004). Stout contends that the ALJ failed to properly evaluate his RFC because he did not consider the 1999 testimony, discounted medical source statements, and failed to give sufficient weight to a Veterans Administration ("VA") disability rating decision. Stout also contends the ALJ
4 - OPINION

improperly applied the Medical Vocational Guidelines in 20 CFR Part 404, Subpart P, Appendix 2.

The Commissioner denies those errors, but admits that the ALJ committed reversible error by failing to comply with this court's remand order to obtain the transcript of the 1999 hearing. He contends further proceedings are necessary to determine what effect Dr. Cohen's testimony from that hearing would have on the current ALJ's RFC assessment and to resolve whether Stout is disabled under the Medical Vocational Guidelines.

The court has discretion to remand an administrative decision for corrective proceedings or to reverse or modify the decision without remanding the case for further proceedings. 42 USC § 405(g); *Harman v. Apfel*, 211 F3d 1172, 1178 (9th Cir), *cert. denied*, 531 US 1038 (2000). Generally, when a court reverses an administrative decision, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Benecke v. Barnhart*, 379 F3d 587, 595 (9th Cir 2004), quoting *INS v. Ventura*, 537 US 12, 16 (2002) and *Florida Power & Light Co. v. Lorion*, 470 US 729, 744 (1985); *Moisa v. Barnhart*, 367 F3d 882, 886-87 (9th Cir 2004). The issue turns on the utility of further proceedings. A remand for an award of benefits is appropriate when no useful purpose would be served by further administrative proceedings. *Smolen v. Chater*, 80 F3d 1273, 1292 (9th Cir 1996); *Rodriguez v. Bowen*, 876 F2d 759, 763 (9th Cir 1989).

///

///

///

## ANALYSIS

I.      **Alleged Errors**

First, Stout challenges the ALJ's failure to produce the transcript from the 1999 hearing. An ALJ must assess a claimant's RFC based on all the evidence in the case record. SSR 96-8p, 1996 WL 374184 * 5. The Commissioner concedes that the ALJ did not consider the testimony from the 1999 hearing in assessing Stout's RFC. Although the ALJ apparently received the 1999 hearing transcript as an exhibit, he failed to mention it in his decision and, in particular, did not discuss Dr. Cohen's testimony received at the 1999 hearing.

This error supports reversal but does not compel a determination of disability or an award of benefits. The ALJ must consider the record as whole, including the 1999 testimony. He must give cogent reasons for accepting or rejecting the testimony and explain the weight attributed to the testimony in his RFC assessment. Until an RFC assessment is properly achieved, the question of disability cannot be resolved. Many of Stout's objections to the ALJ's decision are related to the absence of this transcript. Because the transcript is now finally part of the record (Admin. R. 627-58), those objections can be resolved in proceedings after remand.

Second, Stout challenges the ALJ's RFC assessment because it is inconsistent with the RFC assessed by ALJ Rogers in 1999. ALJ Rogers found Stout retained the RFC to perform the exertional demands of sedentary work with nonexertional limitations on attention and concentration. *Id* at 20. In contrast, ALJ Hyatt found Stout retained the RFC to lift 30 pounds occasionally and 15 pounds frequently and could stand or walk for a total of six hours in a workday, if permitted to alternate between sitting and standing at will, with nonexertional limitations on fine finger manipulation and contact with the public. *Id* at 308.

Because ALJ Rogers's decision was vacated by the Appeals Council, her findings with respect to Stout's RFC were not binding on ALJ Hyatt. *Rice v. Sullivan*, 912 F2d 1076, 1080-81 (9th Cir 1990), *overruled on other grounds*, *Bunnell v. Sullivan*, 947 F2d 341 (9th Cir 1991). Stout asserts that because the two ALJs relied on the same evidence to reach their RFC assessments, their divergence cannot be legitimately explained. The premise is not factually correct. ALJ Hyatt made no mention of the 1999 transcript and, in particular, Dr. Cohen's testimony concerning Stout's exertional capacity, leading to the inference that he did not consider it. Similarly, ALJ Rogers did not have the benefit of the testimony presented at the hearings before ALJ Hyatt or the medical evidence produced after her April 1999 decision. Because neither RFC assessment resulted from a consideration of the record as a whole, the divergence does not suggest that either assessment is more accurate than the other. This simply emphasizes the need for proper consideration of all the evidence to arrive at an accurate assessment of Stout's RFC.

Third, Stout contends the ALJ improperly evaluated the opinion of Robert Berselli, MD, regarding his exertional capacity. Dr. Berselli evaluated Stout in February 1997 for long-standing complaints of neck and low back pain. Admin. R. 152-53. On physical examination, Stout had good range of motion in both areas and a normal neurological examination of the upper and lower extremities. *Id* at 152. Diagnostic imaging revealed degeneration at the C4-5 and L3-4 levels of the spine. *Id*. Dr. Berselli diagnosed a chronic cervical and lumbar strain with degenerative disc disease in the two areas mentioned. *Id*. In July 1997, MRI studies confirmed the degenerative changes in the cervical and lumbar regions of the spine, but showed no evidence of nerve root impingement, and Stout had normal spinal cord dimension and signal.

*Id* at 155-58. Dr. Berselli completed a worksheet indicating Stout could lift and/or carry 20 pounds occasionally and 10 pounds frequently, stand and/or walk at least 2 hours in a workday, sit about 6 hours in a workday, and was limited to occasional fingering. *Id* at 238-39.

The ALJ's RFC assessment effectively discounted the lifting limitations in Dr. Berselli's opinion. When an ALJ discounts an examining physician's opinion, the ALJ must make "findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record." *Thomas v. Barnhart*, 278 F3d 947, 957 (9th Cir 2002), quoting *Magallanes v. Bowen*, 881 F2d 747, 751 (9th Cir 1989); *Lester v. Chater*, 81 F3d 821, 830 (9th Cir 1995).

The ALJ's discussion of Dr. Berselli's opinion focused only on the fingering limitation, presumably because it was the only part of Dr. Berselli's opinion implicated in the first appeal and mentioned by this court in its remand order. In the first appeal, Stout contended the fingering limitation precluded him from working as a telemarketer. Admin. R. 327. ALJ Hyatt responded to the remand order by discussing that portion of Dr. Berselli's opinion and, ultimately, including a limitation to occasional fine finger manipulation in the RFC assessment of his most recent decision. *Id* at 308, 312.

In the current appeal, Stout relies on the exertional limitations in Dr. Berselli's opinion which were not raised in the court's remand order or in the corrective proceedings which followed it. ALJ Hyatt gave reasons for discounting Dr. Berselli's opinion, including its remoteness in time relative to the amended onset of disability, its reliance on subjective reports which lacked credibility, and the absence of treatment for the allegedly debilitating symptoms. *Id* at 312. It is apparent, however, that the ALJ was not considering the exertional limitations in

8 - OPINION

Dr. Berselli's opinion, as opposed to the fingering limitations, while asserting those reasons. This omission was reasonably justified by the scope of the court's remand order. In any event, it does not compel a finding of disability.

The exertional limitations in Dr. Berselli's opinion are not entirely consistent with the record as a whole. Indeed, Dr. Berselli's opinion of Stout's lifting limitations appears to be contrary to Stout's later testimony. Stout testified in December 2002 that he thought he could lift 30 pounds and that he would have difficulty lifting ten pounds frequently only if it required repetitive movement. *Id* at 654. He testified that he could lift his 13.6-pound baby and carry him while walking around for a half an hour at a time. *Id* at 685, 694. This testimony appears to be the basis of the lifting limitations in the ALJ's RFC assessment. *Id* at 340. In addition, when Stout established care with Thomas Anderson, MD, in May 2000, he reported no neck pain for three months and back pain only after prolonged sitting. *Id* at 504. His physical examination was essentially normal. *Id*. At the VA rating examination in July 2000, Stout reported flare-ups of pain with associated weakness only at three to five year intervals. *Id* at 536-37. That physical examination was also essentially normal. *Id*. In August 2000, Stout told Dr. Anderson his neck pain was improved and he had satisfactory pain control without treatment or medication other than marijuana. *Id* at 499. In January 2001, Stout reported remarkable improvement in neck and back pain as long as he avoided repetitive motions. *Id* at 494-95. There appears to be little or no evidence of complaints to medical providers, much less treatment, for physical problems in the remainder of the record.

The court cannot make independent findings based on this evidence to affirm the ALJ's evaluation of Dr. Berselli's opinion on grounds the ALJ did not invoke. *Pinto v. Massinari*, 249

9 - OPINION

F3d 840, 847 (9th Cir 2001); *Connett v. Barnhart*, 340 F3d 871, 874 (9th Cir 2003). This does not mean the court is required to ignore this evidence in exercising its discretion to conclude that an immediate award of benefits is not appropriate. The conflicts in the evidence regarding Stout's exertional capacity indicate further proceedings are appropriate to permit the ALJ to explain his reasons for diverging from Dr. Berselli's findings. As already noted, the ALJ must consider the entire record, including the 1999 testimony of Dr. Cohen, in assessing Stout's RFC.

Fourth, Stout contends the ALJ improperly discounted the opinion of Jeffrey Sher, PsyD. Dr. Sher performed a psychological assessment in August 2002. Admin. R. 524-30. He evaluated Stout's allegations of dysthymia and attempted to assess the effects of his daily marijuana use. In his mental status examination, Stout's gait and posture were unremarkable, and he was pleasant and exhibited no unusual behavior. *Id* at 527. His speech, intelligence, and mood seemed good. *Id*. Despite an upbeat appearance, Stout claimed a subjective sense of total hopelessness. *Id*. He was fully oriented and alert and demonstrated good concentration and persistence. *Id*. Dr. Sher felt he had reasonably good interpersonal skills, but tended to be opinionated in a way that would be tedious and inappropriate in some work settings. *Id*. Stout's subjective responses on the Beck Depression Index were consistent with mild depression. *Id*. On formal testing, Stout showed intelligence in the high average range and memory in the superior range with excellent retention and good working memory. *Id* at 528-29. On personality testing, Stout responded with a profile consistent with individuals who are moody, restless, dissatisfied, and opinionated. *Id* at 529. Such individuals often report chronic anger, somatic complaints, rebelliousness, and difficulty with authority figures. *Id*. Dr. Sher felt the test scores

gave indications of moderate depression and anxiety with brooding over getting a raw deal in life.  *Id*.  Dr. Sher diagnosed dysthymic disorder which he assessed as chronic and mild.  *Id.*

Dr. Sher opined that Stout had some symptoms consistent with dysthymia, but appeared to feel better about life.  *Id* at 530.  He was unsure if Stout's daily marijuana use contributed to his depression, but believed his history of alcoholism and chronic pain were the primary factors.  *Id*.  Dr. Sher concurred with Stout's report that his primary problems were physical and his psychological reaction to chronic pain was secondary.  *Id*.

In August 2002, Dr. Sher submitted a medical source statement indicating Stout had no limitations in intellectual or cognitive functions, but had moderate impairment in his ability to interact appropriately with supervisors and to respond appropriately to work pressures and changes in routine.  *Id* at 534-35.

The ALJ discussed Dr. Sher's medical source statement and gave it significant weight in his RFC assessment, discounting only the portion regarding Stout's limitations on interactions with supervisors and difficulty responding to work pressures and changes in routine.  *Id* at 313.  The ALJ relied primarily on Stout's work history which included periods of steady employment with promotions.  *Id* at 313-14.  Notably, Stout did not report losing jobs due to problems interacting with supervisors or coping with work pressure or changes in routine.  *Id* at 314.  He described himself as a good worker who quit jobs when he felt his individuality and freedom were being threatened.  *Id* at 171.  For example, he worked steadily for a year and a half and gained promotions at Cub Foods until they instituted a random drug testing policy.  Stout chose to quit working because he did not want to stop using marijuana or face termination for submitting a positive urinalysis sample.  *Id* at 81, 163, 171, 670.  This evidence supports the

11 - OPINION

ALJ's reasons for discounting Dr. Sher's opinion that Stout had limitations in interactions with supervisors and difficulty responding to stress and changes in routine.  The reasons are specific and legitimate and supported by inferences that flow logically from the evidence.  *Thomas*, 278 F3d at 957; *Lester*, 81 F3d at 830.  Accordingly, the ALJ's evaluation of Dr. Sher's opinion was adequate and is upheld.  *Batson*, 359 F3d at 1193 (9th Cir 2004); *Andrews v. Shalala*, 53 F3d 1035, 1039-40 (9th Cir 1995).  An ALJ need not incorporate into his RFC assessment and vocational inquiry any limitations he reasonably finds unsupported by the record.  *Osenbrock v. Apfel*, 240 F3d 1157, 1164-65 (9th Cir 2001).

Fifth, Stout contends the Medical Vocational Guidelines require a determination of disability as of his 55th birthday  When a claimant has the RFC to perform substantially all of the demands of work at a particular exertional level, the Medical Vocational Guidelines direct a conclusion of disabled or not disabled based on a matrix of four vocational factors:  maximum sustained exertional level, age, education, and skills acquired in past work experience.  20 CFR Pt 404, Subpt P, App 2 § 200.00.  When a claimant has nonexertional limitations that impede his or her ability to perform the full range of work at a given exertional level, the Medical Vocational Guideline that corresponds to the claimant's four vocational factors is used as a framework or starting point.  Social Security Ruling ("SSR") 83-14, * 3, 1983 WL 31254.  In complex cases, the ALJ can rely on a vocational expert to evaluate the extent to which nonexertional limitations erode the range of work the claimant can still do.  *Id.*

The ALJ used the Medical Vocational Guidelines as a starting point because Stout had nonexertional limitations impeding the full range of work at any particular exertional level.  He found that Stout's vocational factors most closely corresponded to Guideline § 202.14 which

corresponds to light exertion, age 50 to 54, high school education, and no transferable skills. Admin. R. 315. The ALJ relied on testimony from the VE to determine the extent to which Stout's nonexertional limitations eroded the light, unskilled occupational base. *Id.* The VE identified light, unskilled occupations that a person with Stout's nonexertional limitations could still perform. *Id* at 315-16, 621-23.

Stout points out that Guideline § 202.06 directs a conclusion of disabled and corresponds to the same vocational factors as the guideline used by the ALJ, except the age category is 55 and above. He argues this should have led the ALJ to find him disabled when he reached age 55 in May 2003. This would be a persuasive argument were it not for the fact that both parties agree the ALJ's RFC assessment cannot be affirmed. Therefore, the proper exertional level to be used as a vocational factor in the Medical Vocational Guidelines is unknown. Unfortunately, until an accurate RFC assessment based on the record as a whole has been achieved, the Medical Vocational Guidelines cannot be properly applied.

The Commissioner also argues that further proceedings are necessary to permit the ALJ to make findings regarding transferable skills Stout might have acquired in his past work. This argument is not persuasive because the ALJ and VE considered only unskilled occupations. Admin. R. 315. Even if it is determined that a claimant has no transferable skills, a finding of not disabled may be based on the ability to do unskilled work. SSR 82-41, *1, 1982 WL 31389. In any event, the point is moot at this juncture because the case must be remanded for an accurate RFC assessment.

Sixth, Stout contends that the ALJ failed to give sufficient weight to a VA disability rating decision. In October 1996 the VA issued a rating decision finding Stout 20% disabled due

13 - OPINION

to degeneration in his cervical spine.  Admin. R. 114.  In January 1998, the VA issued another rating decision finding Stout 50% disabled by dysthymic disorder on a temporary basis with the expectation of improvement.  *Id* at 198, 202, 203.  In October 2000, the VA increased Stout's disability rating to 100% for dysthymia.  *Id* at 539.  The rating increase was based on the examiner's finding that Stout presented a persistent danger of hurting himself or others.  *Id* at 544-45.  That finding was based on Stout's subjective statement to the VA examiner that he has daily homicidal ideation and episodic suicidal ideation.  *Id*.

A VA disability rating does not bind the ALJ to reach the same result.  20 CFR §§ 404.1504, 416.904.  In the Ninth Circuit, however, an ALJ "must ordinarily give great weight to a VA determination of disability."  *McCartey v. Massanari*, 298 F3d 1072, 1076 (9th Cir 2002).  An ALJ "may give less weight to a VA disability rating if he gives persuasive, specific, valid reasons for doing so that are supported by the record."  *Id*.

In this case, the ALJ considered the VA disability rating and discussed it at length in his decision.  Admin. R. 310-11.  He chose to give the VA rating less weight because the record did not include objective evidence supporting disabling mental impairments.  *Id* at 310.  Instead, the ALJ found that the VA's determination was based on Stout's subjective statements which were inconsistent and lacked credibility.  *Id*.

On December 9, 1997, the VA examined Stout for post traumatic stress disorder ("PTSD").  *Id* at 166-71.  Stout told the examiner he had been a cargo handler on civilian ships during the Vietnam war, had not been involved in combat and had not felt in danger.  *Id* at 167.  He did not exhibit or endorse any PTSD symptoms.  *Id* at 167, 169.  Stout described his daily neck pain as about a three on a scale of zero to ten, with exacerbations on three occasions in

1970, 1976, and 1995. *Id* at 168. Stout told the examiner he had quit work after two years at Cub Foods because they were instituting random urinalysis drug testing and he feared dismissal for marijuana use. *Id* at 169. Stout admitted he was not highly motivated to find work, get medical help, or access vocational programs. *Id* at 171. He enjoyed being a rebel and avoiding VA rehabilitation programs. *Id*. He was satisfied with his own remedies, primarily marijuana. *Id* at 169. The examiner opined that Stout did not appear to be socially or occupationally limited by his emotional state and only limited to a slight degree by the neurological condition in his neck. *Id* at 171.

In another PTSD examination by the VA on December 31, 1997 (*id* at 173-80), Stout told Gary Monkarsh, PhD, he had symptoms of paranoia, anger and depression, and described traumatic combat experiences in Vietnam. *Id* at 176-77, 180. Stout reported an episode of homicidal ideation when an officer suggested he was malingering to get out of the military. *Id* at 176. He complained of daily suicidal and homicidal ideation without a plan. *Id*. Dr. Monkarsh opined that Stout was not significantly socially impaired, but had dysthymia symptoms of chronic depressed mood, insomnia, low self esteem, and feelings of hopelessness. *Id* at 174. He recommended psychotherapy to help Stout reduce his reliance on marijuana. *Id* at 173. Stout did not follow up with this recommendation or receive any other mental health treatment.

Due to discrepancies in the statements Stout gave the VA mental health examiners, the ALJ concluded that his subjective reporting to the VA was unreliable. *Id* at 310. Indeed, the ALJ found Stout's subjective statements generally lacked credibility and were unreliable unless corroborated. *Id* at 309-10. Stout did not challenge the ALJ's credibility determination, and his subjective assertion of suicidal and homicidal ideation was not corroborated. Because this

uncorroborated subjective statement was the sole basis of the VA disability rating decision, the ALJ's determination that the VA disability rating was entitled to little weight logically flows from the ALJ's credibility determination. It also follows that the disability rating decision was no more credible than the statement upon which it was based. *Fair v. Bowen*, 885 F2d 597, 605 (9th Cir 1989); *Tonapetyan v. Halter*, 242 F3d 1144, 1149 (9th Cir 2001).

Instead of the VA rating decision, the ALJ relied on the portions of Dr. Sher's opinion that he found supported by the record to assess Stout's mental impairments. Admin. R. 313-14. Notably, Dr. Sher did not indicate any sign that Stout posed a danger to himself or others. Accordingly, the ALJ's basis for discounting the VA disability rating was persuasive, specific, and valid. *McCartey*, 298 F3d at 1076.

## II.     Remand

This case has been pending before the Social Security Administration since Stout applied for disability benefits nearly 14 years ago. Two ALJs have conducted five administrative hearings and produced three final decisions. It is extremely difficult to justify prolonging the case further for additional administrative proceedings.

Nevertheless, because the parties agree that reversible error has occurred and because a thorough examination of the record does not reveal that Stout has met his burden of proving disability, this court reluctantly grants the Commissioner's Motion to Remand (docket # 43). The scope of the proceedings after remand shall be limited, and the Commissioner is urged to expedite their completion. New evidence need not be solicited or accepted unless the Commissioner deems it helpful in addressing the matters specified below.

In the proceedings after remand, the Commissioner shall assess Stout's exertional limitations in light of the testimony from the hearing held in March 1999 before ALJ Rogers, the findings of Dr. Berselli, and all other evidence of exertional limitations in the record.  The ALJ shall provide cogent reasons for discounting any such evidence that is not given significant weight in the new decision.  The ALJ shall incorporate those exertional limitations in a new RFC assessment, but need not reassess Stout's mental impairments.  The Commissioner shall apply the Medical Vocational Guidelines, 20 CFR Part 404, Subpart P, Appendix 2, in accordance with the pertinent Social Security Rulings, based on the new RFC assessment.  If necessary, the Commissioner may obtain testimony from a vocational expert based on the new RFC assessment.  The Commissioner shall determine whether Stout is disabled within the meaning of the Social Security Act and issue a new decision.

DATED this 18th day of February, 2010.

        s/ Janice M. Stewart_____
        Janice M. Stewart
        United States Magistrate Judge

17 - OPINION